331 A.2d 652

**In re ADOPTION OF Mahlon Nichelle McCRAY.**

**Appeal of Leonard McCRAY.**

Supreme Court of Pennsylvania.

Argued Oct. 9, 1974.

Decided Jan. 27, 1975.

212

William F. Donatelli, Pittsburgh (Court appointed), for appellant.

F. Peter Dixon, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

OPINION OF THE COURT

JONES, Chief Justice.

■■ This case is a direct appeal from the entry of a decree of the Orphans' Court Division of the Court of Common Pleas of Allegheny County allowing the adoption of Mahlon Nichelle McCray (hereinafter called Nichelle), minor child of appellant, Leonard McCray, and involuntarily terminating Mr. McCray's parental rights and duties. After the hearing below, the petition for adoption of appellee, Larue McKenzie, was denied and an order was entered directing that Mr. McKenzie and his wife, Nichelle's mother, remain in custody of the child. Shortly thereafter, following argument before the court en banc, the original decree was unanimously reversed and a decree of adoption was entered. The only question

properly before this Court [1] is whether the evidence clearly warrants a finding that appellant "either has evidenced a settled purpose of relinquishing parental claim . . . or has refused or failed to perform parental duties" for a period of at least six months.[2] We find that there was sufficient evidence of appellant's failure to perform parental duties to justify the entry of a decree of involuntary termination under Section 311(1) of the 1970 Adoption Act and therefore affirm.

The facts in this case were as follows: Appellant married Lee Olar Forrest some time prior to February 1968. On February 7, 1968, appellant's wife gave birth to Nichelle and for approximately three months following the birth the McCray family remained together in their Pittsburgh home. After May of 1968, Nichelle's parents separated and the child stayed with her mother.[3] During 1968, appellant was employed briefly between periods when the family went on relief. In January of 1969, Mr.

1. Appellant also contends that the adoption petition failed to sufficiently allege facts which would constitute abandonment. However, since this question was not raised in the court below, it has not been properly preserved. *Chwatek v. Parks*, 450 Pa. 62, 299 A.2d 631 (1972); *Wenzel v. Morris Distributing Company*, 439 Pa. 364, 266 A.2d 662 (1970). Moreover, even had this issue been preserved, we recently repeated, when confronted with a similar challenge, that where abandonment is proven but not alleged to invalidate an adoption decree would be senseless. *Appeal of Diane B.*, 456 Pa. 429, 436, 321 A.2d 618 (1974); *Wischmann Adoption Case*, 428 Pa. 327, 237 A.2d 205 (1968).

2. The lower court proceeded under Section 311(1) of the 1970 Adoption Act, Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311 (Supp.1973), which provides:
   " § 311. Grounds for involuntary termination
   The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:
   (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . . ."

3. Although the lower court did not include this in its finding, there was uncontradicted testimony that Mr. and Mrs. McGray saw each other, albeit sporadically, during the final months of 1968.

McCray was sentenced to six-months' imprisonment for violating the Uniform Firearms Act and in December of the same year he was sentenced to three months for rape or fornication. A few months after being released, appellant was convicted on two counts of armed robbery and since August of 1970 has been serving a five to ten year sentence in the State Correctional Institution.

Six months after appellant's first conviction, Nichelle and her mother went to live with an aunt in Charleston, South Carolina. Nichelle's mother returned in Pittsburgh in August of 1969 and on January 30, 1970, was divorced from appellant. On December 31, 1970, Mrs. McKenzie married the appellee. Nichelle rejoined her mother in November of 1971 and has resided with the McKenzie family ever since. On March 17, 1973, Mrs. McKenzie gave birth to a second child. Mr. McKenzie is financially able to support both children and has testified that he is anxious to care for and educate his stepdaughter.

Since May of 1968, Mr. McCray has spent little or no time with his daughter. Since his first conviction, McCray's only "contact" with Nichelle consisted of a birthday card, sent on Nichelle's first birthday, and a $10.00 or $20.00 gift handed to the child's mother in August of 1969. Although appellant admitted lack of contact with Nichelle, he testified that he loved his child, thought of her constantly and did in fact make inquiries regarding her health and well-being. In defense of his alleged disinterest in Nichelle, he stated that he had not always known of Nichelle's whereabouts and that attempts to communicate with his daughter were thwarted by prison officials. McCray's testimony was the subject of much dispute and, at best, indicated that since his 1970 conviction he made only two attempts to contact Nichelle, the first occurring some time in May of 1972.

Based on the preceding facts, the lower court concluded that Mr. McCray had evidenced a lack of re-

gard for his daughter and a settled purpose of relinquishing his parental claim. Although we have not disturbed the lower court's findings (in accordance with *Girard Trust Bank v. Sweeney*, 426 Pa. 324, 231 A.2d 407 (1967)), based on such findings we have difficulty justifying the termination of McCray's rights on the ground of a "settled purpose to abandon." [4] Nevertheless, we need not consider the sufficiency of the evidence on this ground since we believe that the present factual situation is exactly what the legislature intended to cover by the latter part of Section 311, subsection 1, of the 1970 Adoption Act [5]—namely, a "refusal or failure to perform parental duties." [6]

4. Our difficulty stems from the fact that the lower court appears to have placed the burden of proof on the appellant. We have continually repeated that in view of the seriousness and permanency of adoption, the burden of proof (which should be met by a preponderance of the evidence) must be placed on the party seeking termination of parental rights. *See, e. g., In Re Adoption of R. I.*, 455 Pa. 29, 32, 312 A.2d 601 (1973), and *Jacono Adoption Case*, 426 Pa. 98, 231 A.2d 295 (1967). Since a careful review of the record reveals that appellee met his burden in regard to appellant's "failure to perform parental duties," we have limited our inquiry to the sufficiency of the evidence on that ground. As to McCray's settled purpose, however, it is doubtful that the evidence was sufficient to show intent since, except for his own testimony revealing a strong desire to remain the father of Nichelle, there was a dearth of evidence on this point. (*See Sheaffer Appeal*, 452 Pa. 165, 305 A.2d 36 (1973), and *Sarver Adoption Case*, 444 Pa. 507, 510, 281 A.2d 890 (1971), suggesting that to show a settled purpose there must be an affirmative indication of a positive intent).

5. The fact that the court en banc did not consider the latter subsection does not preclude our inquiry. It is well-established that an issue not considered by the court below may be raised on appeal by an appellee to sustain a judgment. *See, e. g., International Union of Operating Engineers No. 66 v. Linesville Construction Co.*, 457 Pa. 220, 322 A.2d 353 (1974); *Ridley Township v. Pronesti*, 431 Pa. 34, 244 A.2d 719 (1968); and *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955).

6. As background to our inquiry, we note that the Adoption Act of 1970 has broadened the grounds for abandonment that existed under prior law. Under the Act of April 4, 1925, P.L. 127, § 1, as amended, it was necessary to show *both* a settled purpose to relinquish parental claims *and* a refusal or failure to perform parental duties for a period continuing six months and hence abandon-

This Court has recently taken the view that it is in the child's best interest to require that a parent "exert himself to take and maintain a place of importance in the child's life" (*Appeal of Diane B., supra*, 456 Pa. at 433, 321 A.2d at 620, *quoting In Re: Adoption of J R F*, 27 Somerset L.J. 295 [298], 304–305 (Pa.C.P.1972). With this in mind, we have held that the parent has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child. *See Appeal of Diane B., supra; Jacono Adoption Case*, 426 Pa. 98, 231 A.2d 295 (1967); and *In Re: Adoption of J R F, supra*. Since in all adoption proceedings the ultimate determination is based on an examination of the particular facts, our inquiry must turn to whether this appellant has performed his affirmative duties as fully as possible under his particular circumstances.

■■ Initially, we note that performance was made more difficult for this appellant as he was in prison and unable to support his family for most of the period under consideration. However, a parent's absence and/or failure to support [7] due to incarceration [8] is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities dur-

ment was construed to be "largely a matter of intent." *See, e. g., Harvey Adoption Case*, 375 Pa. 1, 99 A.2d 276 (1953). Under the present law, abandonment is established if *either* of the aforesaid grounds are proven and, thus, there will be cases where a parent will forfeit his rights despite a *desire* to remain the parent or where there is no settled purpose to relinquish parental claims. *See Appeal of Diane B.*, 456 Pa. 429, 321 A.2d 618 (1974); and *In Re: Lumiere Castel Cassen*, Pa., 326 A.2d 377 (1974).

7. *See Hangartner Adoption Case*, 407 Pa. 601, 181 A.2d 280 (1962), and *Southard Adoption Case*, 358 Pa. 386, 57 A.2d 904 (1948).

8. *See Jacono Adoption Case, supra; Farkas Adoption*, 62 Pa.D. & C.2d 488 (C. P. Mercer 1973); *Adoption of Terry Lee Hull, Jr.*, 12 Mercer 116 (1972); *Welker's Adoption*, 50 Pa.D. & C. 573 (O. C. Clinton 1944); and *Adoption of Julia Ann Grabowski*, 24 Westmoreland L.J. 162 (1942).

ing his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," his other rights may be forfeited. *See In Re: Adoption of J R F*, 27 Somerset L.J. at 304.

◼ The testimony adduced at the hearing below evidences that Mr. McCray had no direct contact with his child for well over two years. Although most of this time was spent in prison, the preponderance of the evidence reveals that while in prison, he did not take advantage of his visitation rights or his personal counselors nor did he make sincere or persistent efforts to locate or inquire about his daughter.[9]

Furthermore, although appellant evidenced renewed interest in his daughter after acquiring knowledge of appellee's plans to adopt Nichelle, the courts have held that such a renewal of interest as in the instant case after the six-months' statutory period has passed will not revive parental rights toward that child. *See Smith Adoption Case*, 412 Pa. 501, 505, 194 A.2d 919, 922 (1963). *Cf. Harvey Adoption Case*, 375 Pa. 1, 99 A.2d 276 (1953). This Court indicated in *Davies Adoption Case*, 353 Pa. 579, 587, 46 A.2d 252, 256 (1946):

> "Abandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child. . . ."

Even if we accept that until recently appellant felt inhibited by the obstacles confronting him in prison, as we re-emphasized in the *Smith Adoption Case, supra*, 412 Pa. at 505, 194 A.2d at 922: "Parental rights may not be

---

9. Since there was evidence that had McCray made an effort he could have located his daughter, we do not accept appellant's defense that he was ignorant of Nichelle's whereabouts. *See Owen Adoption*, 51 Pa.D. & C.2d 761 (C. P. Mercer 1971).

218

preserved . . . by merely waiting for some . . . convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs)." Since an affirmative response to the needs of the child is required and since at least six months passed during which time appellant did not perform any parental duties, we find the forfeiture of his rights permissible under the 1970 Adoption Act.

Decree affirmed. Each party to pay own costs.

POMEROY, J., concurs in the result.