J-S79030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO C.N.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.M., FATHER | No. 2568 EDA 2014 |

Appeal from the Decree entered July 22, 2014,
in the Court of Common Pleas of Lehigh County, Orphans'
Court, at No(s): A2013-0040

BEFORE:    ALLEN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 08, 2015**

J.M., ("Father"), appeals from the decree entered July 22, 2014 which granted the petition filed by S.E.D. and her husband, D.A.D. ("Petitioners"), to terminate involuntarily Father's parental rights to his minor, female child, C.N.M. ("Child").  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> [Child] was born in Virginia [in May] 2005.  When [Child] was approximately six weeks old, her biological mother[, M.S.,] ("Mother") was incarcerated, and Petitioners, [] who are Mother's aunt and her husband, were summoned to Virginia to collect [Child] and provide care for her in a safe environment so as to avoid her placement in foster care.  Upon their petition filed in July 2005, and with the consent of both Mother and [Father], . . . Petitioners were appointed [c]o-[g]uardians of the [p]erson of [Child] pursuant to 20 Pa.C.S.A. § 5111. Since that time, [Child], now nine years old, has been in the continuous care of Petitioners.

---

* Retired Senior Judge assigned to Superior Court.

Father is 36 years old and a high school and trade school graduate. He [was] incarcerated in Virginia continuously since September 2004, before [Child]'s birth, for assault and malicious wounding. . . . He [was] released from prison in October 2014, and [must] complete two years of supervised probation.[1] At the time of the hearing in this matter, h]e plan[ned] to live with his extended family in Alabama. Father has seen [C]hild only one time, during [C]hild's first six weeks [following] birth. He has had no other direct contact with her. He has never spoken with [C]hild. He telephoned Petitioners one time, approximately nine years ago, but, according to Petitioners, he used foul language so they had his calls blocked from prison. Father testified he did not call more often because telephone calls from prison were expensive and he relied upon Mother during the first two years of [Child]'s life to keep him informed as to her progress. Over the years, Father sent [Child] two gifts, a dollhouse and a jewelry box he made through the arts and crafts program at the prison. He testified the arts and crafts program has since been cut from the prison's budget. There was conflicting testimony regarding the nature and frequency of Father's correspondence with [Child]. Petitioners characterized it as sporadic and comprised of no more than a dozen letters and cards during the past nine years, a birthday card every year and some Christmas cards. They were all addressed to [Child]; no correspondence was addressed to Petitioners. Father has never requested any reports as to [C]hild's schooling, behavior[,] or health. Father testified that he sent [Child] a card for every holiday and probably a hundred cards and/or letters during the past nine years. He last wrote to [Child] in May 2014, on her birthday. Neither Father nor Petitioners produced any correspondence sent by Father; however, Petitioners testified that they saved all of them and when [Child] was younger, read them to her. [Child] is now able to read, and Petitioners testified that she shows no interest in Father's correspondence. Father has provided no financial support for [C]hild. He never undertook any formal efforts to effect his custodial rights in [C]hild. Petitioners testified [Child] knows Father's name and knows that she is biologically his daughter, but she calls petitioners "Mommy and Daddy." Petitioners testified [Child] has never asked to see Father, and that they have a photograph of

---

[1] We take judicial notice that on October 10, 2014, during the pendency of this appeal, Father was released from prison in Virginia.

Father, but [Child] has never asked to see it. She has no name for Father; he is a virtual stranger to her.

Father acknowledges that Petitioners have been [Child]'s "mommy and daddy" for the past nine years and testified that he believes it is appropriate that they remain in those roles. Father testified that upon his release from prison, he would like to build a relationship with [Child] gradually because he realizes that she does not know him at all. He testified that his incarceration has kept him from performing parental duties and that he has been unable to provide [Child] with any essential parental care. He acknowledged he does not know how to approach a nine-year-old girl. He expressed profound gratitude to Petitioners for parenting [Child] in his and Mother's stead. He explained his admittedly limited number of efforts to contact [Child] by telephone.

Counsel for [Child] confirmed that [Child] has little interest in Father's desire to begin to forge a relationship with her.

[S.E.D.] is Mother's aunt, 59 years old and employed as a psychiatric nurse. Her husband, [D.A.D.], is employed in inventory control for a technical company. He was adopted at the age of ten years, and testified from personal experience about the importance for stability and security in a child's life. They have resided in the same home in Kempton, Lehigh County, for [13] years. In June 2005, when [Child] was six weeks old, they responded to a request to go to Virginia to take custody of [Child] because Mother had been taken to jail. Father was already incarcerated. [Child] is enrolled in a public elementary school, has friends[,] and is doing well. She is in good health. By all accounts, even from Father, she is part of Petitioners' family unit[.]

Trial Court Opinion, 7/22/14, at 1-3.

The procedural history of this case is as follows. On April 8, 2013, Petitioners filed a petition to terminate involuntarily Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b), and to confirm the

voluntary relinquishment of Mother's parental rights.[2]  The trial court held a hearing on the petitions on June 10, 2014.

At the hearing on June 10, 2014, Petitioners testified on behalf of themselves.  Father testified from prison in Virginia via videoconference.  The parties stipulated to the contents of the testimony that would have been given by Child's paternal grandparents, R.M. and her husband, E.M.  **See** N.T., 6/10/14, at 112-114.  On July 22, 2014, the trial court entered a decree involuntarily terminating Father's parental rights.  This timely appeal followed.[3]

Father raises four issues for our review:

1. Whether the [trial c]ourt committed an error of law or abuse of discretion in terminating the parental rights of Father pursuant to 23 Pa.C.S.A. § 2511(a)(1) where the evidence demonstrated Father's consistent efforts to present himself as a parent resource despite his incarceration?

2. Whether the [trial c]ourt committed an error of law or abuse of discretion in terminating the parental rights of Father pursuant to 23 Pa.C.S.A. § 2511(a)(1) where the evidence demonstrated Father attempted to use the resources and educational services available to him . . . so that he can serve as a parent when he is released from prison in October 2014?

---

[2] On October 13, 2013, Mother signed a consent form, voluntarily relinquishing her parental rights to Child.

[3] Father filed his concise statement of errors complained of on appeal contemporaneously with his notice of appeal.  **See** Pa.R.A.P. 1925(a)(2).  The trial court issued an opinion contemporaneously with its order terminating Father's parental rights.  After Father filed his concise statement, the trial court issued an additional opinion on September 3, 2014.  All issues raised on appeal were included in Father's concise statement.

3. Whether the [trial c]ourt committed an error of law or abuse of discretion in terminating the parental rights of Father pursuant to 23 Pa.C.S.A. § 2511(a)(2) where the evidence demonstrated that Father's period of incarceration which prevented him from exercising parental duties is imminently ending[,] thus the conditions and causes of the inability to provide parental care will be remedied[,] and Father has stated a commitment to provide an appropriate degree of care?

4. Whether the [trial c]ourt committed an error of law or abuse of discretion in terminating the parental rights of Father pursuant to 23 Pa.C.S.A. § 2511(b) where the evidence demonstrated that Father availed himself of all means to develop and maintain a relationship with his daughter[,] but was obstructed by [Petitioners]?

Father's Brief at 4.

Father argues that his incarceration in an out-of-state facility, his lack of financial means, and his rejection by Child's guardians thwarted his efforts to have a place of importance in Child's life. Father asserts that, in prison, he took every course available to improve himself, prepare to have gainful employment, and to learn about parenting. Father states that he plans to return to the community in Alabama where his parents and grandparents live. Father complains that the trial court ignored his testimony that his release will permit him the freedom and flexibility to communicate, travel, and work, and to become a contributing person in Child's life. Father claims that Child's guardians, the Petitioners, obstructed his efforts to connect with Child from prison, and marginalized and erased him from Child's life. Father asserts that involuntary termination of his parental rights and adoption of

- 5 -

Child by Petitioners extinguishes any chance for him to have a place in Child's life.

Our standard of review is well-settled:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the [trial court's] decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support the opposite result.

*In re D.A.T.*, 91 A.3d 197, 203 (Pa. Super. 2014), *appeal denied*, 95 A.3d 278 (Pa. 2014) (internal alteration, quotation marks, and citations omitted).

"This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a)." *In re M.T.*, 101 A.3d 1163, 1179 (Pa. Super. 2014) (*en banc*) (citation omitted). Here, we will focus on section 2511(a)(1), (2), and (b).

- 6 -

Section 2511 provides, in relevant part, as follows:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish

- 7 -

parental claim to a child or a refusal or failure to perform parental duties.

\* \* \*

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

**In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

Furthermore:

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

**In re Z.P.**, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted).

This Court has defined parental duties as follows:

Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court discussed *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered the termination of an incarcerated person's parental rights based upon alleged abandonment. Our Supreme Court stated:

Applying in *McCray* the provision for termination of parental rights based upon abandonment . . . we noted that a parent has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child. We observed that the father's incarceration made his performance of this duty more difficult.

\* \* \*

[A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable

firmness in declining to yield to obstacles, his other rights may be forfeited.

**S.P.**, 47 A.3d at 828 (internal quotation marks and citations omitted).

After our careful review of the trial court's application of the law to the facts of this case, we find no reason to disturb the trial court's conclusions that Father failed to perform his parental duties with regard to Child, as he has been continuously incarcerated since before she was born. We also find no reason to disturb the trial court's conclusion that Father's explanation for his lack of contact, *i.e.*, Petitioners were obstacles, lacked credibility. Additionally, we find no reason to disturb the trial court's determination that Father failed to sustain his burden as to his post-abandonment contact, which amounted to sending a few cards and letters to Child and sending two gifts made through the arts and crafts program at prison.

Father cites to **In re R.I.S.**, 36 A.3d 567 (Pa. 2011), for the proposition that sending cards shows that he did not abandon Child. **R.I.S.**, however, is distinguishable. In that case, our Supreme Court noted that the father continued to send the child cards on a monthly basis. **Id.** at 570. In contrast, in the case at bar the trial court found that Father's efforts were sporadic and irregular, as he did not attempt to contact Child with regular and sustained frequency. **See** Trial Court Opinion, 9/3/14, at 2. The trial court found that Father's testimony that he sent 100 cards was not credible. **See** Trial Court Opinion, 7/22/14, at 3. Thus, the trial court's

determinations regarding section 2511(a)(1) are supported by competent, clear and convincing evidence in the record.

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for her physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2) are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court addressed the relevance of incarceration in termination decisions under section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.
>
> * * *
>
> [T]he length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be

- 11 -

remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

**S.P.**, 47 A.3d at 829-830 (internal quotation marks and citation omitted).

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. **A.L.D.** 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. **Id.** at 340. The evidence in this case demonstrated that Father's continued incapacity, abuse, neglect, or refusal to parent could not, or would not, be remedied, as he has been incarcerated since before Child was born. Further, we find no reason to disturb the trial court's conclusions that the Petitioners sustained their burden to demonstrate that Father had an incapacity to parent Child, and was unable to remedy the conditions or causes of his incapacity within a reasonable amount of time, as he had no plan to care for Child upon his release from prison.

Father's argument regarding section 2511(a)(2) essentially requests that this Court make credibility and weight determinations different from those of the trial court. While Father may claim to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. **Z.P.**, 994 A.2d at 1121. As this Court stated in **Z.P.**, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **Id.** at 1125.

- 12 -

Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *B., N.M.*, 856 A.2d at 856.

After our careful review of the record in this matter, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. The trial court properly considered the history of the case, including Father's neglect as a parent to Child, and his incarceration, and determined that he would not remedy his failure to parent. Father cannot now shift the blame to Petitioners for his failure to parent Child. Accordingly, we find that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated:

> [I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. . . . [T]he determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal alteration, quotation marks, and citations omitted).

Here, the trial court found that the Petitioners, not Father, have provided for Child's developmental, physical, and emotional needs and welfare, and that Father will not be able to provide for her needs. To this end, Father testified that Child's interests would be best served by continuing to live with the Petitioners. *See* Trial Court Opinion, 9/3/14, at 3. Further, the trial court properly found that there is no bond between Child and Father. This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). The trial court properly found that Father did not put himself in a position to assume daily parenting responsibilities for Child so that he could develop a real bond with Child.

- 14 -

*See* Trial Court Opinion, 9/3/14, at 3; *In re J.L.C.*, 837 A.2d 1247, 1249 (Pa. Super. 2003). The trial court found:

> As a result of [Father's] failure to take proactive steps to assert the role of a parent in [C]hild's life, [C]hild has no bond with [Father]. Accordingly, she would suffer no harm from termination of [Father's] parental rights. Her needs and welfare are being served in her present situation, living with the only parents she has ever known.

Trial Court Opinion, 9/3/14, at 3.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare and the absence of any bond with Father, we conclude that the trial court did not abuse its discretion in finding that Father's appeal lacks merit as to section 2511(b). Accordingly, we affirm the termination decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/8/2015