J-S31014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.T.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.T.E., III, FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 64 WDA 2017 |

Appeal from the Decree entered December 9, 2016
In the Court of Common Pleas of Butler County
Orphans' Court at No(s):  O.A. No 9

BEFORE:   PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.                         **FILED MAY 15, 2017**

A.T.E., III. ("Father") appeals from the decree entered on December 9, 2016, granting the petition filed by D.P. ("Mother") and involuntarily terminating his parental rights to his male child, D.T.P., born in May 2009, ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (b), so that Child may be adopted by her current  husband, E.C., ("Stepfather"). We affirm.

On February 22, 2016, Mother filed the petition seeking to involuntarily terminate Father's parental rights to Child.  On September 28, 2016, the trial court held a hearing on the petition.  At the hearing, Mother presented the testimony of Father, as on cross-examination, and Stepfather, and then testified on her own behalf.

On December 9, 2016, the trial court entered its findings of fact and termination decree setting forth the following facts that it found credible from the evidence.

> The clear and convincing evidence shows that while Father desired visitation with Child, he did not perform any parental duties. Father had minimal contact with Child from his date of birth, [in May 2009], until Father's incarceration May 14, 2010. During this time[,] Father did pay child support. Over the next three years[,] Father sent a handful of letters to Child while incarcerated. After his release from prison in December, 2013, […], Father contacted Mother on several occasions requesting visits with Child which Mother denied, [and] Mother informed Father that she would only consider visits if mandated through the [c]ourts. Father testified that he made a knowing decision not to proceed through the judicial system because he believed that process was not in Child's best interest.
>
> In December 2015, Father purchased and provided to Child Christmas gifts. However, Father did not provide any other financial support for Child after his release from incarceration.
>
> The evidence showed that Mother did not acquiesce to Father's request for visits. The evidence also reveals that Mother did not want Father to have a relationship with Child.
>
> Mother refused to give Father her address. However, the issue before the [c]ourt is whether Father performed parental duties, and he did not. While Mother did not agree to introduce Father back into Child's life, she did not create such an impediment that prevented Father from performing parental duties. In fact, Father's testimony was clear that he knew he could use the judicial system to gain parenting time, but made a specific decision not to do so. He could have[,] after incarceration[,] continued to send letters, cards, gifts, or financial support to Child. Simply put, Father accepted Mother's unwillingness to provide visitation with Child and took no other affirmative steps to perform parental duties except occasionally making additional request[s] to Mother.
>
> The court[,] finding that Mother proved by clear and convincing evidence §2511(a)(1), the [c]ourt considers [sic] 23

Pa.C.S.A. §2511(b). Child had minimal contact with Father for the first year of his life. The last contact between Child and Father was July 2010. Until shortly before the hearing, Child was unaware that Mother's current husband was not his Natural Father. The clear and convincing evidence is that there is no bond between Child and Father. Child has a strong positive bond with Mother's husband[,] who desires to adopt Child. Child has other [step]-siblings who are either biologically related to Mother's husband or are being adopted by him.

There is no evidence that Child would be emotionally harmed by the termination of Father's parental rights. Primary consideration was given to the developmental, physical and emotional needs and welfare of Child. The court finds that it would best serve the needs and welfare of the [c]hild to terminate the parental rights of Father so that he could be adopted by Mother's husband[,] who is the only father figure Child has known.

Orphans' Court Findings of Fact, 12/9/16, at 1-2 (unnumbered).

Father timely appealed.

On appeal, Father raises two issues:

1. Did the [trial court] commit an error of law in determining that Mother . . . proved by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

2. Did the [trial court] commit an error of law in determining that the Natural Father . . . failed to perform parental duties pursuant to 23 Pa.C.S.A. § 2511(a)(1)?

Father's Brief, at 5.[1]

_____

[1] In his brief, Father contends that the trial court abused its discretion or erred as a matter of law in concluding that the evidence was sufficient to support the involuntary termination of his parental rights under § 2511(a)(1). He does not raise the termination of his parental rights under subsection (b) in either his concise statement or the statement of questions
*(Footnote Continued Next Page)*

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

_(Footnote Continued)_ _____

involved section of his brief. Thus, he has waived any challenge to the termination under subsection (b). **_See Krebs v. United Refining Company of Pennsylvania_**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

The burden is upon the *petitioner* to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***See In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).[2]

Moreover, we have explained that

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id***. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

In his brief, Father contends that the court abused its discretion or erred as a matter of law in concluding that the evidence was sufficient to support the involuntary termination of his parental rights under § 2511(a)(1) and (b).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, as noted, the court terminated Father's parental rights under § 2511(a)(1) and (b), which provides as follows:

### § 2511. Grounds for involuntary termination

---

[2] Thus, the burden to support the petition is not on both the petitioner *and* the guardian *ad litem*, as alleged by Father.

- 5 -

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to subsection 2511(a)(1), our Supreme Court has held that

[o]nce the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***In re Adoption of Charles E.D.M.***, 708 A.2d 88, 92 (Pa. 1988) (citation omitted).

Further, this Court has stated that

- 6 -

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Father argues that the record established that the Mother failed to sufficiently demonstrate that his conduct over the six months immediately preceding the filing of the petition demonstrated that he had a settled purpose of relinquishing his parental claim and failed to perform his parental duties. *See* Father's Brief, at 8. Additionally, Father asserts that he put forth reasonable and significant efforts to find and contact the Child, considering all of the circumstances surrounding this case, and that Mother's refusal to allow him to see Child was a barrier to his ability to parent. *See id*.

In support of his argument, Father relies on *Adoption of S.H.*, 383 A.2d 529 (Pa. 1978), and *Lookabill v. Moreland*, 485 A.2d 1204, 1206 (Pa. Super. 1984), in urging that the court failed to consider the circumstances of this case. Specifically, Father contends that he was incarcerated, and he utilized all of the resources available to him to attempt to establish a connection with Child. At the same time, Mother was engaging in ongoing efforts to evade Father and prevent a relationship between him and Child. Father alleges that Mother utilized his incarceration to further these efforts

by changing her address and telephone number without telling him. Moreover, Father contends that the record also clearly established that Mother actively sought to prevent and obstruct his relationship with Child, and that, by terminating Father's parental rights, the trial court rewarded Mother's misconduct. Father claims that, considering the totality of the circumstances and the bad faith conduct of Mother, the trial court should have excused his lack of success in contacting Child. **See** Father's Brief, at 8-11.

Father testified that he was convicted and incarcerated for dealing in illegal drugs. **See** N.T., 9/28/16, at 11. He was incarcerated in July 2010, was released to a half-way house in October 2013, and was released on parole at the time of the hearing on September 28, 2016. **See id**., at 7-9. Father was drug tested on a weekly basis as of the time of the hearing. **See id**., at 11.

Obviously, incarceration makes performance of the duty to protect, support, and maintain communication with a child much more difficult. Our Supreme Court has instructed that

> a parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

47 A.3d at 828 (quoting *In re: Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)). "[I]ncarceration neither compels nor precludes termination of parental rights." *Id*. (quoting *In re Z.P.*, 994 A.2d 1108, 1120 (Pa. Super. 2010)).

With the above standards of review in mind, we have thoroughly reviewed the record, the parties' briefs, and the applicable law. We find that the trial court ably and methodically considered the evidence presented at trial, and addressed Father's issues.

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. This Court finds that the trial court's determinations are supported by competent evidence.[3] Accordingly, we affirm the trial court's decree on the basis of the discussion in the trial court's findings of fact, set forth verbatim above, *see ante*, at 2-3, entered on December 9, 2016. *See* Trial Court Findings of Fact, 12/9/16, at 1-2.

Decree affirmed.

---

[3] Although Father has waived any argument regarding subsection (b), had he preserved the issue, we would have found it lacked merit. There was sufficient evidence to allow the trial court to make a determination of Child's needs and welfare and as to the existence of a bond between Father and Child that, when severed, would have no detrimental impact on Child.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/15/2017