J-S21001-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF Z.V.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1737 WDA 2019 |

Appeal from the Order Entered October 10, 2019
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  033 of 2019

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    FILED APRIL 21, 2020

J.H. (Father) appeals from the trial court's order involuntarily terminating his parental rights to his minor daughter, Z.H. (Child) (born October 2011).  After careful review, we affirm.

Mother and Father lived together until early 2013 when they separated; Mother left with Child and Mother's two other children to live with maternal grandmother.  Child was approximately 15 months old at the time of parents' separation.  Father has been incarcerated on and off since September 2013 for various crimes ranging from simple assault to drug offenses and burglary, and including parole violations.

In February 2013, Mother filed a custody complaint in Washington County; an interim consent order was entered on March 18, 2013, awarding

Mother sole legal custody of Child and granting Father periods of supervised[1] physical custody. In March 2014, Father petitioned to modify the custody order so that Paternal Grandmother could have visitation while Father was incarcerated. In the interim, Mother moved to Westmoreland County and the petition was transferred there. On November 3, 2014, Father petitioned for shared legal custody and visitation at SCI-Fayette, where he was imprisoned at the time for a drug conviction. In February 2015, the trial court permitted Paternal Grandmother to intervene in the custody matter, but ordered Father have no visits with Child until his release from prison. Father filed another petition to modify the custody arrangement in April 2015 after his release from prison. In May 2015, the court awarded Mother primary physical custody and Father shared legal custody and supervised physical custody.[2] The court also ordered Father to attend co-parenting counseling and permitted him to communicate with Child via email and text messaging.[3] On August 18, 2015, Mother and Father entered into a consent order providing for shared legal custody and weekend physical custody for Father. The last time Father had physical contact with Child was in 2015.

On March 9, 2017, Mother petitioned to modify the latest custody order, alleging that Father had been re-incarcerated since late 2015 and was an unfit

_____

[1] Paternal grandmother was ordered to supervise Father's custodial periods.

[3] At this time, Father was also the subject of a Protection from Abuse petition.

parent. The court awarded Mother sole legal and physical custody.[4] On March 22, 2019, Mother filed a petition to terminate Father's parental rights to Child; Mother's husband, G.S. (Stepfather), intends to adopt Child. See 23 Pa.C.S. §§ 2512(a)(1), (b). On June 11, 2019, the court held a termination hearing at which Mother, Stepfather, Paternal Grandmother, and Father testified. On October 10, 2019, the trial court entered an order granting Mother's petition to terminate Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2) and (b) of the Adoption Act.[5] Father filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Father presents the following issues for our consideration:

(1)    Whether the [h]onorable [t]rial [c]ourt erred in finding clear and convincing evidence that the moving party met its burden as to terminating parental rights of [F]ather under 23 Pa.C.S. [] § 2511(a)(2).[6]

_____

[4] In June 2017, Mother petitioned to relocate to Lachine, Michigan, with G.S., her then-fiancé. The petition, however, was dismissed when Mother decided to postpone her relocation plans.

[5] 23 Pa.C.S. §§ 2101-2938.

[6] Under section 2511(a)(2), a parent's rights to his or her child can be terminated where clear and convincing evidence is provided to establish that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2).

(2)    Whether the [h]onorable [t]rial [c]ourt erred in finding by clear and convincing evidence that the moving party met its burden as to terminating parental rights of [F]ather under 23 Pa.C.S. [] § 2511(a)(1).[7]

(3)    Whether the [h]onorable [t]rial [c]ourt erred in finding by clear and convincing evidence that the moving party met its burden under 23 Pa.C.S.[] § 2511(b)[8] that the best interests of [Child] are met by terminating the Father's parental rights.

Appellant's Brief at 4 (renumbered for ease of disposition).

Father's claims on appeal boil down to one primary argument, that the trial court improperly terminated his parental rights based solely on the fact that he is an incarcerated parent. Father alleges that he utilized resources while he was in jail to continue and pursue a relationship with Child, including his proactive involvement in custody proceedings involving Child and the fact

_____

[7] Under section 2511(a)(1), a parent's rights to his or her child can be terminated where clear and convincing evidence is provided to establish that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

[8] When terminating the rights of a parent, the court shall:

give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

that he made telephone calls to Child and sent her cards and gifts over the years while he was in prison.

In In re Adoption of C.L.G., 956 A.2d 999 (Pa. Super. 2008), our Court noted:

> Incarceration alone is not sufficient to support termination of parental rights under any subsection. A parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life. [A] parent's responsibilities are not tolled during incarceration, and[,] therefore[, the court] must inquire whether the parent utilized those resources available while he or she was in prison to continue a close relationship with the child.
>
> *    *    *
>
> [Moreover, i]n cases involving an incarcerated parent, this Court has emphasized that a "parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." In re N.M.B., [] 856 A.2d 847, 856 (Pa. Super. 2004)[.] "[T]he parent wishing to reestablish his parental responsibilities bears the burden of proof relative to post-abandonment contact." See In re K.Z.S., [] 946 A.2d 753, 759 (Pa. Super. 2008).

Id. at 1006 (some citations and internal quotation marks omitted).

Father relies upon In re R.I.S., 36 A.3d 567 (Pa. 2011), to support his argument that the trial court improperly terminated his parental rights. In R.I.S., our Court reversed the trial court's orders denying York County Children and Youth Services' (CYS) petitions to involuntarily terminate a father's parental rights to his two children and changing the placement goals for the children from reunification to adoption. The father had been sentenced

to serve two to four years in prison when the children were just eleven months and four months old. Id. at 569. CYS filed petitions to change the placement goal and to terminate the father's parental rights in December 2009. At the termination hearing, CYS caseworkers testified that a family service plan, with the goal of reunification, had been created for the father in 2009. Id. At permanency review hearings in July and December 2009, evidence showed that the father had met each of his service goals, cooperated with service planning, signed all necessary releases, remained in written and telephonic contact with CYS, provided CYS with documentation of his completion of therapeutic prison programs, and had not had any incidents of misconduct while in prison. Id. Evidence was also presented at the hearing to show that the father had maintained or attempted to maintain contact with the children by: sending them monthly cards; sending them video-recordings of himself reading books to them; requesting visitation with children; and using a pre-paid phone card to attempt to call children several times. Id. at 570.

On appeal from this Court's decision to reverse the change of goal and termination orders, the Supreme Court noted:

> This Court has long held that a parent's absence or failure to support his or her child due to incarceration is not, in itself, conclusively determinative of the issue of parental abandonment. In re Adoption of McCray, [] 331 A.2d 652, 655 (Pa. 1975). Indeed, incarceration alone is not an explicit basis upon which an involuntary termination may be ordered pursuant to Section 2511 of the Pennsylvania Adoption Code. In re C.S., 761 A.2d 1197, 1201 [] (Pa. Super. 2000) (en banc). Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison to continue and pursue a close

> relationship with the child or children. McCray, supra at 655. An incarcerated parent desiring to retain parental rights must exert him- or herself to take and maintain a place of importance in the child's life. Adoption of Baby Boy A., [] 517 A.2d 1244, 1246 (Pa. 1986).

Id. at 573-74. In reversing our Court, the Supreme Court found that "there was competent evidence to support the trial court's denial of the petition for involuntary termination . . . [where] the Superior Court improperly substituted its judgment for that of the trier of fact[.]" Id. at 574. In coming to its holding, the Supreme Court "reiterated the definitive principle that when a parent uses the opportunities that are available in prison to make sincere efforts to maintain a place of importance in the lives of his or her children, incarceration alone will not serve as grounds for the involuntary termination of his or her parental rights." Id.

Instantly, we find the facts of R.I.S. distinguishable from the current case and, thus, affirm the trial court's order terminating Father's parental rights. While Father did exert some effort to maintain contact with Child when he was incarcerated, since 2015 he has had, at most, sporadic telephone calls with Child. Father presented no proof of the cards and gifts he allegedly sent Child over the years, via Paternal Grandmother, while he was incarcerated. Father's claims are self-serving and hardly of the import necessary to counter the clear and convincing evidence presented at the termination hearing. Father's testimony that he chose to "get finished" with his criminal case in 2018, rather than file a petition to modify custody despite being told by the family court judge that if he wished to assert custodial rights he should file

such a petition, speaks volumes of his failure to perform parental duties and refusal to remedy his behavior that led to Child lacking essential parental care, control or necessary subsistence. N.T. Termination Hearing, 6/11/19, at 102. See 23 Pa.C.S. § 2511(a)(1), (a)(2). See also Adoption of C.J.P., 114 A.3d 1046, 1054 (Pa. Super. 2015) ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citation omitted).

Most telling, however, is the fact that Father pled guilty to conspiracy, reckless burning or exploding places, burglary and retail theft in June 2019, just three months after Mother filed her petition to terminate his parental rights. Father's inability to curb his criminal conduct when faced with the risk of losing his parental rights is another example of his failure to remedy the incapacity that caused Child to be without parental care. Finally, the fact that Father is expected to be incarcerated for four to eight years for his most recent criminal transgressions further supports the decision to terminate his parental rights; Father is simply not meeting Child's needs and it is in her best interests that his rights be terminated. See In re Adoption of S.P., 47 A.3d 817, 828 (Pa. 2012) (while incarceration neither compels nor precludes termination, it is factor, and can be determinative factor, in court's conclusion that grounds for termination exist under section 2511(a)(2), where repeated and continued incapacity of parent due to incarceration has caused child to be

without essential parental care, control or subsistence and causes of incapacity cannot or will not be remedied).[9]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2020

_____

[9] Father provides no argument regarding why termination was improper under subsection 2511(b). See Appellant's Brief, at 8 (stating "Moreover, termination is not in the best interest of [C]hild; and the lower court failed to make an analysis under [s]ection 2511(b) as required."). Thus, we find the issue waived.

However, we also note that the trial court issued a supplemental Rule 1925(a) memorandum stating that termination under section 2511(b) was in the best interests of Child where Child currently has stability in her life and Father has virtually no relationship with Child. See Trial Court Opinion, 11/14/19. See also Trial Court Opinion, 10/10/19, at 8 (stating "[C]hild has no bond at all with [F]ather."); In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). Finally, this Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond is attenuated. In re K.Z.S., 946 A.2d 753, 764 (Pa. Super. 2008).