J-S79031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: M.M.C., a : IN THE SUPERIOR COURT OF
Minor : PENNSYLVANIA
:
:
:
:
:
APPEAL OF: R.C., Father : No. 1178 EDA 2016

Appeal from the Decree Entered March 10, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000592-2015,
FID: 51-FN-000960-2014

IN THE INTEREST OF: M.A.C., a : IN THE SUPERIOR COURT OF
Minor : PENNSYLVANIA
:
:
:
:
:
APPEAL OF: R.C., Father : No. 1179 EDA 2016

Appeal from the Decree Entered March 10, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000591-2015,
FID: 51-FN-000960-2014

BEFORE: GANTMAN, P.J., MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 19, 2016**

R.C. ("Father") appeals the Decrees entered on March 10, 2016, granting the Petitions filed by the Philadelphia Department of Human Services ("DHS") for the involuntary termination of his parental rights to his two children: M.M.C., a female born in March 2006, and M.A.C., a male born

in March 2011 (collectively "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[1]  We affirm.

In its Opinion, the trial court set forth the factual and procedural history of this case, which we adopt herein for the purpose of this appeal. *See* Trial Court Opinion, 5/18/16, at 1-3.

On March 10, 2016, the trial court entered its Decrees granting DHS's Petitions, and involuntarily terminating Father's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[2]  On April 8, 2016, Father timely filed Notices of Appeal, along with Concise Statements of errors complained of on appeal, pursuant to Pa.R.A.P.(a)(2)(i) and (b).  This Court, *sua sponte*, consolidated the appeals.

On appeal, Father raises the following issue for our review:

> Did the Court err as a matter of law and abuse its discretion when it terminated [F]ather's parental rights where [DHS] failed to present clear and convincing evidence that Father evidenced a settled purpose of relinquishing [his] parental claim to

---

[1] In its Decrees, the trial court also changed Children's permanency goals to adoption, pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.  Father has not challenged this aspect of the Decrees, and any challenge to those rulings has been waived.  *See Krebs v. United Ref. Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal); *see also* Trial Court Opinion, 5/18/16, at 4.

[2] On April 12, 2016, the trial court entered an Order confirming the consent by C.B., Children's biological mother ("Mother"), to the termination of her parental rights to Children.  Mother did not file an appeal, nor is she a party to the instant appeal.

[C]hildren; and failed to present clear and convincing evidence that [C]hildren would not be harmed by [the] termination of [F]ather's parental rights[?]

Father's Brief at 3.[3]

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> … [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012) (citations omitted).

---

[3] Father stated his issue differently in his Concise Statement; however, we find it preserved for our review.

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. Satisfaction of any one subsection of section 2511(a), along with consideration of subsection 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Father's parental rights based upon subsections 2511(a)(1) and (b), which state the following:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b).

Father initially contends that the trial court erred in finding that DHS presented sufficient evidence to support the termination of his parental rights under subsection 2511(a)(1). *See* Father's Brief at 11. Father

asserts that the trial court abused its discretion in finding that he exhibited a settled purpose to relinquish his parental rights. *Id*. at 12. Father claims that, prior to May 2015, his only goal was to maintain communication with Children, and that he was fully compliant with this goal. *Id*. Father acknowledges that, in May 2015, the trial court added the goals of attending parenting classes, anger management classes and drug and alcohol treatment, but argues that the Community Umbrella Agency ("CUA")[4] social worker assigned to the case, Lashana Kimbrough ("Kimbrough"), never checked to see if these programs were immediately available to Father, never asked the prison for Father's participation records, and never confirmed what work programs Father was participating in. *Id*. at 12-13. Father contends that, despite Kimbrough's failure to confirm information vital to an assessment of Father's goal compliance, the trial court nevertheless found Father to be minimally compliant with his goals on July 17, 2015. *Id*. at 13. Father asserts that, because DHS failed to communicate with the prison, it failed to show that Father had not complied with his goals. *Id*. Father claims that he used all available resources to preserve his parental relationship with Children while in prison, and the trial court erred by terminating his parental rights "almost exclusively" based on his imprisonment. *Id*.

_____

[4] DHS implemented In-Home Protective Services for Children through CUA.

With respect to subsection 2511(a)(1), our Supreme Court has held as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Regarding the termination of the parental rights of an imprisoned parent, our Supreme Court reiterated the standard of analysis pursuant to subsection 2511(a)(1) for abandonment, noting that a parent has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child, and that a parent's imprisonment makes the performance of this duty more difficult. *See In re Adoption of S.P.*, 47 A.3d at 828; *see also In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975). Our Supreme Court has further stated the following regarding the parental obligations of an imprisoned parent:

> a parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent

> does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re Adoption of McCray*, 331 A.2d at 655 (footnotes, internal quotation marks and citation omitted). Further, "incarceration neither compels nor precludes termination of parental rights." *In re Adoption of S.P.*, 47 A.3d at 828 (citation omitted).

In its Opinion, the trial court addressed Father's claim regarding subsection 2511(a)(1), set forth the relevant law, and determined that, during the six-month period preceding the filing of the Petitions, Father had not successfully completed his goals. *See* Trial Court Opinion, 5/18/16, at 4-5. The trial court noted that Father has had no contact with Children or CUA since early summer 2015, has never reached out to CUA to arrange for visitation with Children, and has never met M.A.C. *See id*. at 5. The trial court further determined that Father has not been compliant with court Orders, had not utilized the resources available to him in prison to create and sustain a parent-child relationship with Children, and that Father's own conduct had caused him to be placed in solitary confinement and to lose his phone privileges. *Id.* After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and its conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 827. Accordingly, we affirm the trial court's

termination of Father's parental rights to the Children pursuant to subsection 2511(a)(1).[5]

Father also challenges the sufficiency of the evidence to support the trial court's determination that the requirements of subsection 2511(b) had been satisfied. Father's Brief at 16. Father contends that there was insufficient evidence to support a finding that the termination of his parental rights best serves Children's needs and welfare, and that there was no relationship between him and Children that would cause Children to suffer irreparable harm if his rights were terminated. *Id.* at 15-16. Father claims that he has been in regular contact with Children through telephone conversations and letters, and that Children are aware of their familial relationship with him. *Id.* at 16. Father complains that the CUA social worker did not speak with Children, or consider the importance that Children have a father figure in their lives, before reaching her conclusion that

_____

[5] As we have determined that the trial court did not err in determining that the requirements of subsection 2511(a)(1) were satisfied, we need not address Father's arguments regarding subsection 2511(a)(2). *See In re B.L.W.*, 843 A.2d at 384. Father also purports to challenge the termination of his parental rights under subsections 2511(a)(5) and (8). *See* Father's Brief at 11. However, Father's brief includes no discussion of these subsections. *See* Pa.R.A.P. 2119(a). Moreover, the trial court did not base the termination of Father's parental rights on either of those subsections. *See* Trial Court Decrees, 3/10/16, at 1 (basing the termination of Father's parental rights on subsections 2511(a)(1), (2) and (b)). Accordingly, we decline to address Father's bald claim regarding subsections 2511(a)(5) and (8).

Children would not suffer irreparable harm if his parental rights were terminated. *Id.*

We have explained that, whereas the focus in terminating parental rights under subsection 2511(a) is on the parent; under subsection 2511(b), it is on the child. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super 2008) (*en banc*). In reviewing the evidence in support of termination under subsection 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent …. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent,

to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted); *see also In re T.S.M.*, 71 A.3d at 267 (noting that that even the most abused of children will often harbor some positive emotion towards the abusive parent); *In re K.Z.S.*, 946 A.2d 753, 763-64 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

Further, "a parent's basic constitutional right to the custody and rearing of … [his] child is converted, upon the failure to fulfill … [his] parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted); *see also In re Adoption of C.L.G.*, 956 A.2d at 1007 (noting that a child's life simply cannot be put on hold in the hope that a parent will summon the ability to handle the responsibilities of parenting).

Here, the trial court credited the testimony of Kimbrough that Father and Children have no parent-child bond and that there would be no irreparable harm to Children if Father's parental rights were terminated.

*See* Trial Court Opinion, 5/18/16, at 6; *see also id*. (wherein the trial court noted that Father has not seen M.M.C. in over six years and has never met M.A.C.). The trial court further determined that it would be in Children's best interests to be adopted by Children's foster mother (their maternal great-grandmother), who has been a safe and permanent caregiver for them for the past two years, and who seeks to adopt them. *Id*. at 7. After a careful review of the record in this matter, we find that the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion with regard to subsection 2511(b). *See In re Adoption of S.P.*, 47 A.3d at 827. Accordingly, we affirm the trial court's determination that the requirements of subsection 2511(b) were satisfied.

We, therefore, affirm the Decrees terminating Father's parental rights with regard to Children under subsections 2511(a)(1) and (b).

Decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2016

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of M.A.C., a Minor | : | CP-51-DP-0000991-2014 |
| | : | CP-51-AP-0000591-2015 |
| In the Interest of M.M.C., a Minor | : | CP-51-DP-0000992-2014 |
| | : | CP-51-AP-0000592-2015 |
| | : | |
| | : | FID: 51-FN-000960-2014 |
| | : | |
| APPEAL OF: R.C., Father | : | 1178/1179 EDA 2016 |

**OPINION**

**Fernandes, J.:**

Appellant R.C. ("Father") appeals from the order entered on March 10, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Father's parental rights to M.A.C. ("Child 1") and M.M.C. ("Child 2") ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2) and (b). Janice Sulman, Esq., counsel for Father, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

**Factual and Procedural Background:**

The family in this case became known to DHS on March 11, 2011, when DHS received a General Protective Services ("GPS") report that C.B. ("Mother") had tested positive for cocaine, opiates, methadone and benzodiazepines when she gave birth to Child 2. DHS implemented In-Home Protective Services ("IHPS") in the home of C.S., ("Foster Mother") the Children's maternal great-grandmother. On March 20, 2014, DHS received a GPS report that Child 2 was running naked in a supermarket while Mother was asleep in the store. Mother could not be awakened, and was taken to the Emergency Room where she tested positive for cocaine, opiates, methadone and benzodiazepines. DHS implemented IHPS through a Community Umbrella Agency, ("CUA") which held a Single Case Plan ("SCP") meeting on April 14, 2014. The goal under the SCP was to stabilize the family. Father was incarcerated, having plead guilty to drug-related offenses on January 23, 2004. Mother left the home and could not be located by CUA. The court adjudicated

the Children dependent on May 2, 2014, fully committing them to DHS custody and placing them with Foster Mother. At an October 28, 2014, permanency review the court found that Father had been fully compliant with the SCP, and was having twice-weekly phone contact with the Children. Father was found fully compliant at February 18, 2015, and May 8, 2015, permanency reviews. CUA was ordered to make outreach to Father in prison to see what programs he was engaged with, and to explore visits. Father was found minimally compliant at a July 17, 2015, permanency review and was ordered to have telephone contact with the Children. Petitions to involuntarily terminate Father's parental rights to the Children and change the permanency goal to adoption were filed on August 13, 2015.

The goal change and termination trial was held over two days, January 27, 2016, and March 10, 2016. On January 27, 2016, the CUA social worker testified that Father's objectives under the SCP were to take parenting and anger management classes, engage in drug and alcohol treatment and maintain phone contact with the Children. (N.T. 1/27/16, pg. 23). Father was incarcerated for drug offenses, his minimum release date was January 2017, and his maximum release date was August 2017. (N.T. 1/27/16, pgs. 23-24, 39). Father was in "the hole" – solitary confinement – and his phone privileges were revoked. Father still occasionally maintained contact with CUA and sent the Children letters via CUA. (N.T. 1/27/16, pgs. 5, 26, 46). The prison where Father is incarcerated offers parenting, anger management and drug and alcohol programs. CUA contacted the social worker in the prison, who confirmed that Father had taken anger management classes in 2012, prior to the Children coming into care. CUA was not able to confirm whether Father completed the classes. (N.T. 1/27/16, pgs. 37-38). The CUA social worker was not able to confirm whether Father engaged in any other programs. The prison social worker informed CUA that Father had "no engagement" since 2012. (N.T. 1/27/16, pgs. 25, 38). Father worked in prison, but the social worker did not know what job Father was employed in. (N.T. 1/27/16, pg. 39). Father had been found fully compliant in the past only because he had a single objective: to maintain contact and make himself known. (N.T. 1/27/16, pgs. 35-36). Father has never met Child 2. He has never set up a visit with the Children at the prison. (N.T. 1/27/16, pg. 45). The CUA social worker testified that there was no strong bond between Father and the Children and that there would be no irreparable harm if Father's rights were terminated. A goal of adoption would be in the best interest of the Children. The Children are placed with Foster Mother, their maternal

great-grandmother. Foster Mother is a pre-adoptive resource. (N.T. 1/27/16, pg. 27). The Children are bonded with Foster Mother, and she provides for their needs, including therapy and school. (N.T. 1/27/16, pgs. 28-29, 33-34). The court did not render a decision at this hearing, giving Father another chance to testify by phone at the next trial date. (N.T. 1/27/16, pgs. 8-9).

On March 10, 2016, Father's counsel informed the court that Father would not testify by phone; he did not wish to participate in the hearing. (N.T. 3/10/16, pgs. 5, 27). The CUA social worker testified that there was no bond between the Children and Father, so the Children would suffer no irreparable harm if Father's parental rights were terminated. Foster Mother provides for all the Children's needs, and has a maternal bond with the Children. (N.T. 3/10/16, pgs. 8-9). The court found clear and convincing evidence to terminate Father's parental rights under 23 Pa.C.S.A. §2511(a)(1), (2) and (b). The court also found that DHS had made reasonable efforts to reunify the Children with Father, and that it was in the best interest of the Children to change their permanency goal to adoption. (N.T. 3/10/16, pgs. 30). On April 8, 2016, Father filed this appeal.[1]

**Discussion:**

Father raises the following errors on appeal:

1. The trial court erred as a matter of law and abused its discretion by terminating Father's parental rights where there is no clear and convincing evidence that Father has evidenced a settled purpose of relinquishing parental claim to his child or has refused or failed to perform parental duties.

2. The trial court erred as a matter of law and abused its discretion by terminating Father's parental rights as there is no clear and convincing evidence that there is continued incapacity, abuse, neglect, or refusal by Father to parent that has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being nor is there clear and convincing evidence that Father cannot remedy any conditions and causes of the incapacity, abuse, neglect or refusal.

3. The trial court erred as a matter of law and abused its discretion by terminating Father's parental rights as there was insufficient evidence presented to break the bond the child

---

[1] Mother's parental rights were also involuntarily terminated, but Mother has not appealed.

shared with Father where there was not clear and convincing evidence that the child would not be harmed by the termination

4. The trial court erred as a matter of law and abused its discretion when it terminated Father's parental rights.

Father has not appealed the change of the Children's permanency goal to adoption, so he has waived the right to appeal the goal change. Father has appealed the involuntary termination of his parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

**(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. A parent's incarceration does not preclude termination of parental rights if the incarcerated parent fails to utilize the given resources and to take affirmative steps to support a parent-child relationship. *In re D.J.S.*, 737 A.2d 283 (Pa. Super. 1999).

The petitions for involuntary termination were filed on August 13, 2015. Father's SCP objectives were to take parenting and anger management classes, engage in drug and alcohol treatment and maintain contact with the Children. (N.T. 1/27/16, pgs. 23, 25). The CUA social worker testified that these classes were all available to Father in prison. During the six-month period preceding

the filing of the petitions, Father has not successfully completed any of these programs. Looking beyond the six-month period, the prison social worker informed CUA that Father had had "no engagement" since 2012, two years before the Children came into care. (N.T. 1/27/16, pgs. 25, 38). The court heard testimony that Father took anger management in 2012, but not whether he completed it. (N.T. 1/27/16, pgs. 37-38). Father's only other objective was to maintain phone contact with the Children. Father, by his own conduct, has been placed in solitary confinement and lost his phone privileges. He has had no phone contact with the Children or CUA since early summer 2015. (N.T. 1/27/16, pgs. 26, 46). Father sent CUA letters, but only sporadically. (N.T. 1/27/16, pg. 41). He has never reached out to CUA to set up visitation with the Children, and has never even met Child 2. (N.T. 1/27/16, pg. 27, 45). Throughout the life of this case Father has never been compliant with court orders. He has not utilized the resources available to him in prison to create and sustain a parent-child relationship. As a result the trial court did not abuse its discretion by finding clear and convincing evidence that Father, by his conduct, had refused and failed to perform parental duties under Section 2511(a)(1), so termination under this section was proper.

The trial court also terminated Father's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

Father has demonstrated a pattern of noninvolvement with the Children and noncompliance with his SCP objectives and court orders. Father has not engaged in any parenting, anger management or drug and alcohol programs since the start of this case, even though these programs were all available to him in prison. (N.T. 1/27/16, pg. 25). Father never took any steps to arrange visits with the Children while in prison. (N.T. 1/27/16, pgs. 27, 45). As a result of Father's refusal to parent, Child 2 has never even met Father in person. (N.T. 1/27/16, pg. 27). At the start of this case Father was able to maintain phone contact with the Children, but since summer of 2015, his

own conduct has placed him in solitary confinement without access to a phone. (N.T. 1/27/16, pgs. 5, 23-24). Father wrote two letters to the Children only via the CUA. (N.T. 1/27/16, pg. 41). When given the opportunity by the court, Father did not wish to participate in the hearing, or be present by phone as explained by Father's counsel. (N.T. 3/10/16, pgs. 5, 27). The Children have been in care since May 2, 2014. During that time, Father has failed to take affirmative steps to place himself in a position to parent the Children. Father will not even be eligible for release until January 2017. (N.T. 1/27/16, pg. 39). Father's failure to comply with court orders shows that Father would be unable to remedy the causes of his incapacity in order to provide the Children with essential parental care, control or subsistence necessary for their physical and mental well-being. The Children need permanency, which Father cannot provide. Termination under Section 2511(a)(2) was proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The CUA social worker testified that Father and the Children have no paternal bond. Father has not seen Child 1 in over six years and has never met Child 2 in person. (N.T. 1/27/16, pg. 27), (N.T. 3/10/16, pg. 9). Father has never attempted to arrange visits with the Children. (N.T. 1/27/16, pgs. 27, 45). Father lost his phone access in the early summer of 2015, and has communicated with the Children by mail since. (N.T. 1/27/16, pgs. 5, 26, 46). The CUA social worker testified that there would be no irreparable harm if Father's parental rights were terminated.

(N.T. 1/27/16, pg. 27), (N.T. 3/10/16, pg. 8). It would be in the Children's best interest to be adopted by Foster Mother. (N.T. 1/27/16, pg. 27). Foster Mother and the Children have a parent-child bond, and she cares for their daily needs, including therapy and school. Foster Mother has been a safe and permanent caregiver for the Children for two years, and seeks to adopt them. (N.T. 1/27/16, pgs. 28-29, 33-35), (N.T. 3/10/16, pgs. 8-9). Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no parental bond, and that termination of Father's parental rights would not destroy an existing beneficial relationship.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2) and (b) since it would best serve the Children's emotional needs and welfare. The trial court's termination of Father's parental rights was proper and should be affirmed.

By the court,

Joseph Fernandes J.