J-S31029-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF V.L. | : | IN THE SUPERIOR COURT |
| IN RE: ADOPTION OF N.S.L. | : | OF PENNSYLVANIA |
| IN RE: ADOPTION OF I.L. | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.F.L., JR. | : | |
| | : | |
| | : | |
| | : | No. 221 WDA 2019 |

Appeal from the Order Entered December 28, 2018
In the Court of Common Pleas of Westmoreland County
Orphans' Court at Nos: 120, 121, 122 of 2018

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    FILED AUGUST 20, 2019

D.F.L., Jr., ("Father") appeals from the orders entered on December 28, 2018, in the Court of Common Pleas of Westmoreland County, involuntarily terminating his parental rights to his sons, V.L., born in June of 2011, and N.S.L., born in May of 2009, and his daughter, I.L., born in July of 2012 (collectively, "the Children").  Upon review, we affirm.

On August 30, 2018, A.F. ("Mother") and her husband, E.F. ("Stepfather") (collectively, "Appellees"), filed petitions for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).  A hearing occurred on the petitions on December 6, 2018, during

which Mother, Father, and C.L. ("Paternal Grandmother") testified.[1]  In its opinion accompanying the subject orders, the orphans' court set forth its factual findings, which the testimonial evidence supports.  As such, we adopt them herein.  See Trial Court Opinion, 12/28/18, at 1-7.

By orders dated and entered on December 28, 2018, the orphans' court involuntarily terminated Father's parental rights.  On January 23, 2019, Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issue for our review:

> 1.     Whether the [orphans'] court erred in finding the clear and convincing evidence that [Appellees] met their burden, under 23 Pa.C.S. § 2511(a)(1), when, in the six months preceding the filing of the termination petitions, Father filed a complaint in custody?

Father's brief at 4.

Our standard of review is abuse of discretion, as follows.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial

_____

[1] The Children were represented during the proceeding by legal counsel and a guardian ad litem ("GAL").  The record supports the findings of the orphans' court that the Children told their attorney that they want Stepfather to be their father.  Trial Court Opinion, 12/28/18, at ¶ 33 [N.T., 12/6/18, at 48-50].  Further, the court found that the Children do not want a relationship with Father because they do not know him, inter alia.  Id. at ¶ 34 [N.T., 12/6/18, at 49-50].

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Section 2511(a)(1) and (b) provide as follows:

(a) General Rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

(b) Other considerations. The court in terminating the rights of a parent shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." In re Z.S.W., 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

It is well-established that "Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties." In re Adoption of Charles E.D.M., 708 A.2d 88, 91 (Pa. 1998) (emphasis in original) (citation omitted). In addition,

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the

- 4 -

evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

In re N.M.B., 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Our Supreme Court has explained that parental duty "is best understood in relation to the needs of a child." In re Burns, 379 A.2d 535, 540 (Pa. 1977).

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

Id. (citations omitted).

In In re Adoption of S.P., supra, our Supreme Court discussed In re Adoption of McCray, 331 A.2d 652 (Pa. 1975), a case wherein the Court considered the issue of the termination of parental rights of incarcerated persons involving abandonment, which is currently codified at Section 2511(a)(1). The S.P. Court stated:

> Applying in McCray the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." Id. at 655. We observed that the father's incarceration made his performance of this duty "more difficult." Id.

In re Adoption of S.P., 47 A.3d at 828. The S.P. Court continued:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

> [McCray] at 655 (footnotes and internal quotation marks omitted). . . .

In re Adoption of S.P., supra (emphasis added).

With respect to Section 2511(b), we have explained, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In re C.M.S., 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." Id. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." In re K.Z.S., 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Instantly, Father contends that the court abused its discretion in terminating his parental rights pursuant to Section 2511(a)(1) because he erroneously believed that a Protection from Abuse ("PFA") order entered

against him in 2010 on behalf of Mother continued in effect. Because the Children resided with Mother, he did not contact them. In addition, Father contends that his conduct does not warrant termination because he filed a child custody complaint on March 27, 2018, within six months immediately preceding the filing of the involuntary termination petition.

The orphans' court set forth the following factual findings, in relevant part, which the testimonial evidence supports.

10. [Appellees] have been a couple and resided with one another since September 2013. [N.T., 12/6/18, at 14].

11. The last time . . . Father saw [the C]hildren was at a public park in the Fall of 2013, over five (5) years ago. [N.T., 12/6/18, at 5].

12. During the last five years, Mother's and the [C]hildren's address has been the same and is listed in the white pages of the telephone directory; Mother has a Facebook account; and Mother has maintained the same mobile phone number. [N.T., 12/6/18, at 5-6].

13. Up until 2016, Mother was in contact with [Paternal Grandmother]. . . . [N.T., 12/6/18, at 7].

14. Mother obtained a [PFA] Order against . . . Father in 2010, at a time when only the oldest child was born. [N.T., 12/6/18, at 27-28, 44-45].

15. After [the PFA] Order was issued, . . . Mother and . . . Father continued to have some contact, as their two youngest children were conceived and born after the issuance of the [PFA] Order. [N.T., 12/6/18, at 45].

16. Father has been incarcerated several times over the course of the last several years. He was released from prison in the summer of 2017, and has not been incarcerated since. [N.T., 12/6/18, at 8, 10].

17. Despite the fact that the [C]hildren's location was ascertainable, in the six (6) months prior to the filing of the [p]etitions for [i]nvoluntary [t]ermination of Father's parental rights, . . . Father did not send any cards, gifts or money to the [C]hildren, nor did he attempt to see the [C]hildren. [N.T., 12/6/18, at 5-6].

18. Father testified he did not contact the [C]hildren through . . . Mother because he believed the [PFA] Order was still enforceable. [N.T., 12/6/18, at 18-19, 35-36].

19. Father has provided little to no financial support for the [C]hildren during the last five years; he testified he made one child support payment sometime in 2015. [N.T., 12/6/18, at 8].

20. Father is currently employed as a roofer and installer, yet he has not offered any form of financial support to [the C]hildren in the last six (6) months. [N.T., 12/6/18, at 24].

21. Mother elected not to pursue child support from . . . Father after he was released from incarceration in the summer of 2017 because she and her husband planned to move forward with the termination and adoption. [N.T., 12/6/18, at 9].

22. In late 2017 and early 2018, [Appellees]' attorney sent . . . Father notice of [Appellees]' intent to pursue involuntary termination proceedings and a request to sign a Consent to Adopt. [N.T., 12/6/18, at 20].

23. On March 27, 2018, . . . Father filed a "[c]omplaint for [c]ustody" in Allegheny County. When . . . Father learned that Allegheny County was not the appropriate venue because the [C]hildren did not reside there, he did not pursue the custody action in Westmoreland County. [N.T., 12/6/18, at 14, 25-27].

24. Father took no other steps to contact [the C]hildren during this period of time. During the six (6) months prior to the filing of the [p]etitions in August 2018, . . . Father never contacted . . . Mother to meet or have visitations with the [C]hildren. [N.T., 12/6/18, at 12].

25. The child, I.L., has had no contact with . . . Father since she was a little over one year old and[,] consequently, has no memory of him. [N.T., 12/6/18, at 14-15].

26. The child, V.L., is diagnosed with autism, and is developmentally delayed; he has no memory of . . . Father either. [N.T., 12/6/18, at 15].

27. The child, N.S.L., can identify . . . Father on sight, and infrequently asks questions about him, but he has not seen him since he was a toddler. [N.T., 12/6/18, at 15].

28. [Stepfather] has been the father figure in the [C]hildren's lives for the past six years. The [C]hildren call him "Dad." He provides financial and emotional support. [N.T., 12/6/18, at 15-16].

. . .

Trial Court Opinion, 12/28/18, at 2-5.

Based on the foregoing facts, the orphans' court concluded that Father's conduct warranted the termination of his parental rights pursuant to Section 2511(a)(1). We discern no abuse of discretion.

The testimonial evidence demonstrates that Father has refused or failed to perform his parental duties since 2013. The court found Father's explanations in this regard disingenuous. Father testified that he erroneously believed a PFA order issued against him on behalf of Mother in 2010 remained in effect. Because the Children resided with Mother, he did not contact them in the last five years. N.T., 12/6/18, at 27-28. However, Father testified that he knew the address of the Children's maternal grandfather, but he never sent cards to the Children at that address. Id. at 36. Father further explained his lack of contact with the Children as follows on direct examination:

Q. Why haven't you had contact with the [C]hildren?

A. Since 2013?

Q. Yes.

A. Because I was not the greatest person, and [Mother] didn't want me in my kids['] lives, and I really wasn't fit to be in my children's lives. I was wrapped up with myself and I was battling drug addiction very badly.

Id. at 28-29.

With respect to the custody complaint that Father filed in the Allegheny County Court of Common Pleas on March 27, 2018, Father testified, "I was notified via mail that it was going to get thrown out due to lack of venue, and I was going to have to re-file in Westmoreland County." Id. at 26. Father did not re-file the custody complaint. As such, we discern no abuse of discretion by the court in failing to credit Father for filing a custody complaint within six months immediately preceding the filing of the termination petition. Father's issue on appeal fails.

With respect to Section 2511(b), Father does not raise an issue in the statement of questions involved in his brief. It follows that he does not present a claim regarding Section 2511(b) in the argument section of his brief. Therefore, we do not review the orders under this section. See Krebs v. United Refining Company of Pennsylvania, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived); see also In re M.Z.T.M.W., 163 A.3d 462 (Pa. Super. 2017). Accordingly, we affirm the involuntary termination orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2019