J-A29027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.W., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 826 WDA 2019 |

Appeal from the Order Entered, February 19, 2019,
in the Court of Common Pleas of Washington County,
Orphans' Court at No(s):  63-18-1195.

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:               **FILED DECEMBER 20, 2019**

J.W.  (Father) appeals from the orphan's court order terminating his parental rights to his nine-year-old son, B.W. (Child).  The termination petition was filed by K.B. (Mother).  Mother's husband, A.B. (Stepfather), intends to adopt Child.  After review, we affirm.

The orphan's court stated the factual history of this case as follows:

Child was born of the marriage of Mother and Father, who were married on August 1, 2009 in Virginia. The Child was born [i]n August 2010, and his parents divorced in May of 2013 in Pennsylvania. Mother then married Adoptive Father [i]n May 2017 in Pennsylvania.

During the Child's formative years, Father had been incarcerated on multiple occasions, and was incarcerated at the time of the termination proceedings before the orphan's court (Father appeared by video with the consent of his counsel, who

_____

[*] Retired Senior Judge assigned to the Superior Court.

was present in the courtroom.). Mother left Virginia in February of 2012, with Child, and returned to Pennsylvania due to Father's alcohol problems and the abusive environment in the marital home. Mother moved into her mother's home [in] Charleroi, Pennsylvania.

On July 6, 2012, Mother and Father entered into a consent custody order, although Father was incarcerated in Virginia at the time and did not appear for the custody hearing. Father has not seen Child in person since July of 2015, when Mother drove the child to Virginia to facilitate a visit while Father was incarcerated. Although Mother maintained the same e-mail address since 2015, Father made no attempt to contact Mother or the Minor Child via that e-mail address.

Father did make attempts to text or call Mother via cell phone two to three times a week, but would not request to speak with child. Father had made intermittent child support payments to Mother for the Child, but the last payment of support occurred on July 23, 2016. There was very little communication between Mother and Father between July of 2016 and the time of his most recent incarceration in 2017. Father has not recognized the Child's birthday or Christmas since 2016, however, in 2018, Father did send the Minor Child a birthday card, after being notified of the termination proceedings.

Father did not start making efforts to communicate with the Child until June or July of 2018, after he was given notice that Mother was seeking to terminate his parental rights. Within the six months leading up to that notice, Father made no attempts to communicate with the Minor Child. Father has never been involved in the health care decisions, education decisions, or extracurricular activities relating to the Child. Ultimately, Birth Father has not physically seen the Child since July of 2015, nor has he made an effort to do so, and has not financially supported the Child since July of 2016.

Trial Court Opinion, 7/8/19, at 1-3 (citations to record omitted).

Following a hearing, the orphan's court entered an order on February 15, 2019, terminating Father's rights to B.W. After Father's counsel withdrew and new counsel was appointed, the orphan's court

- 2 -

allowed new counsel to perfect the appeal by June 3, 2019. Father's counsel filed a timely notice of appeal on May 31, 2019. Both Father and the orphan's court complied with Pa.R.A.P. 1925.

Father raises two issues in this appeal:

1. Did the trial court err in granting the Petition for Involuntary Termination of Parental Rights under 23 Pa.C.S. §2511 (a)(1), where [Mother] failed to prove by clear and convincing evidence that anything other than incarceration prevented Father from fulfilling his parental obligations?

2. Did the trial court err in granting the Petition for Involuntary Termination of Parental Rights under 23 Pa.C.S. §2511(b) in that [Mother] failed to prove by clear and convincing evidence that the statutory grounds for termination best serves the needs and welfare of the child?

Father's Brief at 2

We are mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The petitioner must prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

In his first issue, Father contends that the orphans' court decision is against the weight of the evidence. Father maintains that termination was not warranted because he utilized all available resources during his incarceration. *See* Father's Brief at 6-8.

Section 2511(a)(1) provides that a court can terminate parental rights if, *inter alia*, the petitioner provides clear and convincing evidence that the respondent-parent failed to perform parental duties for a period of at least six months immediately preceding the filing of the petition. *See* 23 Pa.C.S.A. § 2511(a)(1).

Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the

whole history of a given case and not mechanically apply the six-month statutory provision. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). However, the court shall not consider any efforts by the parent to which are initiated subsequent to the giving of notice of the filing of the petition. *See* 23 Pa.C.S.A. § 2511(b) (in reference to Subsection 2511(a)(1).

In an analysis under this Subsection 2511(a)(1), we have acknowledged there is no simple or easy definition of parental duties. But we have explained:

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> * * *
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M.*, 856 A.2d at 855 (internal citations and quotations omitted).

The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her

- 5 -

parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. *Id.*

A parent's incarceration does not, in itself, provide grounds for the termination of parental rights. *Id.* An analysis of an incarceration case depends upon which provision under section 2511(a) termination is sought.

When a petitioner seeks to terminate an incarcerated parent's rights under section 2511(a)(1), we have said a parent's responsibilities are not tolled during incarceration. *Id*. The court's focus is whether the parent utilized resources available while in prison to maintain a relationship with his or her child. *Id*. (citation omitted). An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children. *Id.* Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," parental rights may be forfeited. *In re Adoption of A.C.*, 162 A.3d at 1130 (quoting *In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)).

Finally, the court must account for an incarcerated parent's self-imposed barriers while simultaneously evaluating the parent's duty to overcome them:

> Where a non-custodial parent is facing termination of his or her parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent and his or her child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult

- 6 -

> circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

*In re B.,N.M.*, 856 A.2d at 855-856 (citations omitted).

Father cites to sporadic conduct made over the last five years and efforts to complete a divinity program while incarcerated. *See* Father's Brief at 6-8. Mother testified that the last time Father had physically seen Child was in 2015. The last time Mother received any type of support was in July 2016. She testified that Father did not send Child any cards or presents for his birthday or Christmas in 2017. In 2018, Father sent a birthday card. And that the first time Father attempted to communicate with Child in 2018 was in the summer, after Mother had served Father with notice of the filing of the termination petition. The court determined that Mother met her evidentiary burden under Section 2511(a). We conclude that the orphans' court did not abuse its discretion as to the first prong of the termination analysis. *See* 23 Pa.C.S.A. § 2511(a)(1).

We now turn to the second prong under section 2511(b). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have

been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances...where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are also a relevant part of this analysis. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have proper parenting and fulfillment of [the child's]

potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Instantly, the record reveals that Child considers Stepfather to be his dad. He refers to Stepfather as Daddy. Stepfather provides Child with care and support. Child also desires to be adopted by Stepfather. Mother reported that Child did not think he would be able to recognize Father. Child does not talk about Father. And when Child did receive communication from Father, Child was not interested in it. The orphans court determined that in the "six years Child has known [Stepfather], it is clear they have developed an extremely close bond as father and son." The orphans' court determined Mother met the second prong of the termination analysis, concluding that termination would best serve Child's developmental, physical and emotional needs and welfare. We conclude that this finding is supported by the record and thus not an abuse of discretion.

In sum, the orphans' court did not abuse its discretion when it determined that Mother met both prongs of the termination analysis under Sections 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2019