J-S44044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.A.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2311 EDA 2025 |

Appeal from the Decree Entered July 31, 2025
In the Court of Common Pleas of Pike County Civil Division at No(s):
2025-00009

| | | |
|---|---|---|
| IN RE: M.A.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2312 EDA 2025 |

Appeal from the Decree Entered July 31, 2025
In the Court of Common Pleas of Pike County Civil Division at No(s):
2025-00010

BEFORE: LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED FEBRUARY 10, 2026**

L.S. ("Father") appeals from the July 31, 2025, decrees granting the petitions of A.R. ("Mother") and I.R. ("Stepfather"), and involuntarily terminating his parental rights to his son, M.A.S., born in October 2014 ("Son"), and daughter, M.A.S., born in November 2016 ("Daughter")

(collectively, "the Children"), pursuant to the Adoption Act ("the Act"), 23 Pa.C.S.A. § 2511(a)(1) and (b). After careful review, we affirm.

We glean the following factual and procedural history from the record. Mother and Stepfather are married, and Stepfather has known the Children since they were approximately two years old and six months old, respectively. *See* N.T., 7/28/25, at 14-15, 26. In August 2017, when the Children were about two and one-half years old and nine months old, respectively, Father was arrested on charges including involuntary manslaughter. *See id*. at 13-14. Father had no contact with the Children in the nearly eight years between his arrest and the 2025 involuntary termination hearing ("the hearing"). *See id*. at 14.

Mother filed a petition for custody of the Children in 2019. *See id*. at 8. The court conducted a hearing in December 2019, and later that month awarded Mother sole legal and physical custody. *See id*. at 8-10.[1] Father did not seek modification of this order, which remained in effect at the time of the hearing. *See id*. at 10.

Father was paroled in 2022. *See id*. at 33. At the hearing, he alleged, without evidentiary support, that his parole conditions prohibited either direct

---

[1] Father had notice of the hearing but did not participate.

2

or indirect contact with Mother. *See id*. at 33, 38.[2] Father was reincarcerated in February 2024 on unspecified charges, which appeared from the record to be drug- and weapon-related.[3] *See id*. at 14.

In February 2025, Mother and Stepfather filed petitions for the involuntary termination of Father's parental rights to the Children. Additionally, Mother and Stepfather filed contemporaneous petitions for adoption by Stepfather.[4] The court held a hearing on the involuntary termination petitions in July 2025, when the Children were ten and eight years old, respectively.[5]

Mother testified Father's most recent contact with the Children occurred in August 2017, nearly eight years prior to the subject hearing, when the

---

[2] Although Father asserts on appeal that the court can take judicial notice of his parole conditions, *see* Father's Brief at 16, he waived this request by failing to assert it below. *See* Pa.R.A.P. 302(a) (providing issues not raised in trial court are waived on appeal).

[3] Father testified that he was scheduled to be paroled on October 27, 2025, and that his impending parole, which will expire in 2027, contains similar restrictions to his prior parole concerning contact with Mother. *See* N.T., 7/28/25, at 34.

[4] It is not clear from the record whether the Orphans' Court granted Stepfather's petition for adoption, which is not the subject of this appeal.

[5] Lindsey Collins, Esquire ("Attorney Collins"), represented the Children's legal interests during the proceeding. *See* Orders, 2/24/25 (appointment orders). As such, the court complied with 23 Pa.C.S.A. § 2313(a), as interpreted by the High Court. *See In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017) (footnote omitted).

Children were two and a half years and less than one year old, respectively. *See* N.T., 7/28/25, at 14.[6] Mother testified the Children do not know, and would not recognize, Father. *See id*. at 14-15, 19. Mother testified the Children view Stepfather, with whom they lived for the preceding eight years, as their father. *See id*. at 15. She testified the Children call Stepfather "Dad" and look to him for love and comfort. *Id*. at 15, 20. Mother additionally conveyed the Children's desire to share her, and Stepfather's, last name. *See id*. at 21.

Mother testified the Children's best interests would be served by the termination of Father's parental rights because Father was imprisoned for involuntary manslaughter and "he is around guns." *Id*. at 15. Mother stated she is nervous for the Children to be around Father. *See id*. Mother further voiced apprehension because Son is autistic and does not respond well to change. *See id*.[7] Mother expressed concern allowing Father to have contact with Son would "mess up the progress that [they have] had so far with[Son]." *Id*. She testified that Father has no knowledge about the services Son receives. *See id*. at 22.

_____

[6] Father does not dispute Mother's testimony on this point. *See* N.T., 7/28/25, at 41.

[7] Son is diagnosed with autism. *See id*. at 15, 22. He is under the care of a psychiatrist and is accompanied by an aide at school as well as in the summer. *See id*. at 22.

Father stated he was unable to locate and contact Mother, and, therefore, the Children, after approximately sometime in 2019. *See id*. at 33.[8] Mother testified Father would have been able to communicate with her via "email, friends, family, [because she does not] have him blocked on any [social media platforms]." *Id*. at 12, 22. She further noted the availability of communication through her, Stepfather's, and her mother's, presence on Facebook. *See id*. at 13. Moreover, although she moved in 2022, she remained in the same town, and her mail was forwarded to her from her former address. *See id*. at 11.

Mother and Father testified that Father never communicated with the Children during his lengthy incarceration from August 2017 to May 2022. *See id*. at 24, 27, 45. Father testified that from May 2022 until February 2024, when he was on parole and not incarcerated, he did not contact the Children. *See id*. at 39-41, 43, 45. Father further acknowledged that he "[had not] been involved in the Children's lives whatsoever" since his incarceration in 2017. *Id*. at 40-41. Father claimed that his parole conditions prohibited his contact with Mother, and, therefore, he could not contact, and maintain a relationship with, the Children. *See id*. at 33-35, 38. However, Father admitted that his parole conditions did ***not*** prohibit contact with the Children.

---

[8] The record evinces that Father last had contact with Mother in 2019. *See id*. at 12.

*See id*. at 38. Mother and Father both testified that sometime during the parole that began in 2022, Father saw the Children at a bowling alley but failed to engage or communicate with them.[9] *See id*. at 7-8, 33-34. Likewise, upon his reincarceration in February 2024, Father did not communicate with the Children from prison. *See id*. at 33-34, 44-45. Father testified there were no programs in his correctional facilities to facilitate contact with the Children. *See id*. at 44.

Mother testified that the no-contact order between her and Father was not instituted until May 2025. *See* N.T., 7/28/25, at 16. Further, Father provided no evidentiary support for his claim he had been barred from contact with Mother prior to May 2025. *See id*. at 42-43.[10]

The Orphans' Court found Father did not have, or attempt to have, contact with the Children in the six months prior to Mother's and Stepfather's petitions. *See* Decrees, 7/31/25, at ¶ 14. The Orphans' Court noted Father's testimony he did not attempt to contact the Children after 2022 because his parole conditions precluded him from contacting Mother directly or indirectly, but noted Father provided no proof of this condition of probation. *See id*. at

---

[9] It is unclear exactly when this incident occurred.

[10] Father confirmed that neither Mother nor her family are linked to his criminal convictions, *see id*. at 38, 42, further undermining his claim his initial probation barred any contact with Mother.

¶¶ 18-19. The Orphans' Court further found no evidence of a bond among the Children and Father, whom they last saw when they were less than three years old and one year old, respectively. *See id*. at ¶ 24. The court found the Children are bonded with Stepfather, who is pre-adoptive. *See id*. at ¶ 25. By decrees dated and entered July 31, 2025, the Orphans' Court involuntarily terminated Father's parental rights pursuant to Section 2511(a)(1) and (b).

Father, through appointed counsel, filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[11] The Orphans' Court filed timely Rule 1925(a) opinions. This Court subsequently consolidated Father's appeals *sua sponte*.

On appeal, Father raises the following issues for our review:

> 1. Whether the [Orphans'] Court committed an error of law and/or abuse of discretion by finding that termination of Father's parental

---

[11] We note the deadline for Father to file a timely appeal with respect to the Orphans' Court's decrees fell on August 30, 2025. *See* Pa.R.A.P. 903(a). Because that day was a Saturday, and Monday, September 1, 2025, was Labor Day, Father's time to appeal was extended by operation of statute until Tuesday, September 2. *See* Pa.R.J.A. 107(a)-(b); Pa.R.A.P. 107 (incorporating by reference the rules of construction set forth in the Pennsylvania Rules of Judicial Administration with respect to the Pennsylvania Rules of Appellate Procedure); *see also* Pa.R.A.P. 903, cmt.

7

rights was warranted pursuant to 23 Pa.C.S.A. § 2511 (a)(1), (2), (5), and (8)[?][12]

2. Whether the Orphans' Court abused its discretion and committed an error of law when it found that sufficient grounds existed for [] termination of [Father's] parental rights [to the Children], and when the [Orphans'] Court failed to primarily consider the [Children's] developmental, physical and emotional needs and welfare, thus contravening Sections 2511(a) and 2511(b) of the Adoption Act, 23 Pa.C.S.A. §§ 2511(a) & 2511(b)[?]

3. Whether the [Orphans'] Court abused its discretion and/or committed an error of law by failing to consider the best interests of the [Children] and whether [their] best interests would be served by severing the parent/child relationship[?]

Father's Brief at 10 (capitalization standardized).[13]

In his first issue, Father asserts the Orphans' Court abused its discretion by terminating Father's parental rights under Section 2511(a). *See id*. at 15-19.

Our standard of review of grant of a petition for the involuntary termination of parental rights is limited to a determination of whether the decree of the termination court is supported by competent evidence. We must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *See Interest of M.E.*, 283 A.3d 820, 829-30

---

[12] As noted below, the Orphans' Court found termination under Section 2511(a)(1) only.

[13] Attorney Collins submitted a brief to this Court on behalf of the Children wherein she advocated for this Court to affirm the decrees. *See* Brief Filed on Behalf of M.A.S. and M.A.S., Minors.

(Pa. Super. 2022) (internal citations and quotation marks omitted). Further, where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, "an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference [appellate courts] pay to trial courts, who often observe the parties first-hand across multiple hearings." **Id**. In considering a petition to terminate parental rights,

> a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

**Id**.

The involuntary termination of parental rights is governed by Section 2511 of the Act, which calls for a bifurcated analysis that focuses first upon the "eleven enumerated grounds" of parental conduct that may warrant termination. **Id**. at 830; **see also** 23 Pa.C.S.A. § 2511(a)(1)-(11). If the

9

Orphans' Court determines a petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

Here, The Orphans' Court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> * * * * *

> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).[14]

To establish grounds for termination pursuant to Section 2511(a)(1), "[a] petitioner. . . must demonstrate by competent, clear and convincing evidence, the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." *In re Adoption of C.M.*, 255 A.3d 343, 363-64 (Pa. 2021) (citation, internal quotation marks, brackets, and footnote omitted). Even where the failure to perform parental duties for six months is established, a court "must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights." *In re Adoption of L.A.K.*, 265 A.3d 580, 593 (Pa. 2021) (internal citation and brackets omitted). The totality of the circumstances includes consideration of the following: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to

_____

[14] To the extent that Father raises a claim with respect to any subsection of Section 2511(a) other than (a)(1), we do not consider it because subsection (a)(1) was the sole grounds the Orphans' Court found supported termination.

11

reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b)." ***Id***.

Father asserts the court terminated his parental rights due to his incarceration. ***See*** Father's Brief at 18-19. He further asserts Mother obtained custody of the Children in 2019 without his receipt of proper notice. ***See id***. at 15-17. Finally, Father asserts that he did not initiate contact with the Children after being released from prison in 2022 because "it was clear to him" his parole conditions prohibited him from contacting Mother. ***Id***. at 15.

Incarceration is not itself a sufficient ground for the involuntary termination of parental rights under Section (a)(1). ***See In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012); ***In re T.L.H.***, 336 A.3d 1069, 1081 (Pa. Super. 2025). In ***S.P.***, the Supreme Court recognized Section (a)(1) provides that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." ***In re Adoption of McCray***, 331 A.2d 652, 655 (Pa. 1975). The Court simultaneously observed incarceration makes a parent's performance of this duty "more difficult." ***Id***. The ***S.P.*** Court reconciled the competing concerns posed by incarceration of a parent by focusing the Section (a)(1) inquiry on the efforts the imprisoned parent makes to overcome the obstacles to contact with a child:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to

12

completely toll a parent's responsibilities during his or her incarceration. ***Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child.*** Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

***S.P.***, 47 A.3d at 828 (emphasis added) (citation omitted).

Here, the Orphans' Court stated its decision was not based on Father's incarceration, but his failure "to make reasonable efforts to be a parent and/or communicate with the [Children] in almost eight years." Decrees, 7/31/25, at ¶ 28.

The record supports the Orphan's Court's determination Father failed to perform his parental duties far in excess of the statutory six-month statutory period prior to the filing of the February 2025 termination petitions. Father failed to make any effort to maintain a relationship with the Children throughout the Children's lives. It is not disputed that Father last had contact with the Children at the time of his arrest in August 2017. ***See*** N.T., 7/28/25, at 14, 45. It is also important to note that Father never requested modification of the 2019 custody order. ***See id***. at 10, 40, 45; ***see also In re C.E.D.H.***, 338 A.3d 1010, 1025 n.4 (Pa. Super. 2025) (stating, "[o]ur Supreme Court has explained that 'a parent's legal efforts to enforce custodial rights demonstrate affirmative performance of a positive parental duty'") (citations omitted). Father admits that his parole conditions did not prevent him from taking such actions. ***See*** N.T., 7/28/25, at 39. Although he points to his

incarceration as a deterrent, Father ignores that he was not incarcerated for an approximately two-year period from 2022 to 2024. *See id*.

To the extent Father additionally argues that he did not have notice of the December 2019 custody hearing, his claim fails because the record includes an affidavit of service/certificate of service sent to him at his correctional facility. *See id*. at 29-32, 39. As noted by the Orphans' Court, regardless of notice, Father was aware he had two children and still failed to take any action to contact them. Similarly, Father admitted that he had failed to contribute financial support to the Children for at least six years.[15] *See id*. at 39, 41. Because we discern no abuse of discretion by the Orphans' Court, we do not disturb the decrees pursuant to Section 2511(a)(1).

Father's second and third claims assert the Orphans' Court abused its discretion by failing to consider Section 2511(b) and whether the best interests of the Children would be served by severing the parent/child relationship. *See* Father's Brief at 20-25.

Section 2511(b) gives "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). We remain mindful that "the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on

---

[15] Mother testified that Father last contributed financial assistance in the amount of $100 in 2016. *See* N.T., 7/28/25, at 24.

14

a case-by-case basis," with an eye towards "the best interests and the needs and welfare of the particular children involved." ***Interest of K.T.***, 296 A.3d 1085, 1105-06 (Pa. 2023). This inquiry is neither formulaic, nor mechanical. ***See id***.

Our review must include consideration of the bond between the parent and the child. ***See In re E.M.***, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained, however, that "only a necessary and beneficial" parental bond should be maintained. ***K.T.***, 296 A.3d at 1109. A bond is considered to be "necessary and beneficial" if its severance would cause "extreme emotional consequences" or significant, irreparable harm. ***Id***. at 1109-10. The evaluation of a child's respective bonds is "not always an easy task." ***Id***. at 1106 (citation omitted). However, "Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted). As this Court explained, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." ***Id***. (internal citations omitted). Moreover, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

Additionally, it is "within the discretion of the [O]rphans' [C]ourt to prioritize the safety and security [of children] over their bonds with their

parents[.]" **M.E.**, 283 A.3d at 839. Courts should also consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **T.S.M.**, 71 A.3d at 268. Finally, we note that a child's "emotional needs and welfare include intangibles, such as love, comfort, security, and stability." **K.T.**, 296 A.3d at 1106 (quotations omitted).

Here, Father asserts the Orphans' Court abused its discretion by terminating his parental rights solely on the basis of factors beyond his control, such as inadequate housing and income. **See** Father's Brief at 21-22; **see also** 23 Pa.C.S.A. 2511(b) ("The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent."). In addition, Father asserts he has "rehabilitated" and learned the errors of his ways through his incarceration and, in the future, "can provide diligent work to provide the necessary items for his children's healthy development and growth." Father's Brief at 21. Lastly, Father argues that the evidence is insufficient, without expert testimony, to support the court's finding that there is no bond among him and the Children. **See id**. at 24-25.

To the extent that Father claims that the Orphans' Court considered factors beyond his control, such as inadequate housing and income, there is nothing in the record, nor does Father point to anything, to suggest that the court considered such factors in terminating his parental rights. This claim is

16

therefore without merit. As to Father's assertion of his rehabilitation and the ability to provide for the Children in the future, this is purely speculative. Hence, that argument also fails.

With respect to Father's contention the evidence is insufficient to support the Orphans' Court's finding a bond does not exist among him and the Children, we remind Father that "[w]hen conducting a bonding analysis, the court is not required to use expert testimony". *See Z.P.*, 994 A.2d at 1121. Further, on this record, there is no evidence of a parent-child bond between Father and the Children. Therefore, it was reasonable for the Orphans' Court to infer none exists. *See K.Z.S.*, 946 A.2d at 762-63.

Additionally, the record amply demonstrates that Father and the Children do not share a necessary and beneficial relationship. *See K.T.*, 296 A.3d at 1109-10, 1113. Rather, the Children share a beneficial relationship with Stepfather. *See* N.T., 7/28/25, at 15, 20-21. While Father may profess to love the Children, "[a] parent's own feelings of love and affection for a child, alone, will not prevent termination of parental rights." *See Z.P.*, 994 A.2d at 1121. Based upon our review of the record, we discern no abuse of discretion in the Orphans' Court's conclusion that the Children's developmental, physical, and emotional needs and welfare will be served by the termination of Father's parental rights pursuant to Section 2511(b). Accordingly, we affirm the decrees.

Decrees affirmed.

17

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/10/2026